# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JESSE JOSEPH TULLIER

VERSUS

NANCY A. BERRYHILL,
COMMISSIONER OF
SOCIAL SECURITY

CIVIL ACTION NO.

18-511-EWD (CONSENT)

## RULING

Plaintiff, Jesse Joseph Tullier ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance benefits ("DIB"). Plaintiff has filed a Memorandum in Support of Appeal[1] and the Commissioner has filed an Opposition Memorandum.[2] In compliance with a June 20, 2019 Order, both parties filed supplemental briefing regarding the alleged onset date ("AOD") of Plaintiff's alleged disability.[3]

Based on the applicable standard of review under § 405(g) and the analysis which follows, the court **AFFIRMS**[4] the Commissioner's decision and **DISMISSES** Plaintiff's appeal.

### I. Procedural History

Plaintiff filed an application for DIB benefits on July 28, 2015 alleging that he had become unable to work due to complications stemming from compression of his spinal cord and carpal

---

[1] R. Doc. 11. References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR p. [page number(s)]."

[2] R. Doc. 14.

[3] R. Docs. 15, 16, and 17.

[4] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c), R. Doc. 7, and on November 27, 2018, an Order of Reference was issued referring this matter "for the conduct of all further proceedings and the entry of judgment…." R. Doc. 12.

tunnel syndrome.[5] Plaintiff's claim was initially denied on January 8, 2016[6] and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 7, 2017 during which Plaintiff, represented by counsel, testified.[7]

On June 5, 2017, the ALJ issued a notice of unfavorable decision.[8] Plaintiff requested review by the Appeals Council,[9] and on March 6, 2018, the Appeals Council denied Plaintiff's request for review.[10] On May 1, 2018, Plaintiff filed his Complaint.[11] Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[12]

## II. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final

---

[5] AR p. 156. Per Plaintiff's Adult Function Report, Plaintiff stated that compression on his spinal cord led to decreased strength in his arms and legs. AR p. 233. During the March 7, 2017 hearing before the ALJ, Plaintiff explained: "I have spinal cord problems. I have delamination of the spinal cord, and cervical myopathy and lumbar disc disease. My leg is – with the spinal cord is pinched in three spots in my neck where they cased it in with a fusion. And with clamps that – in the neck. And what it does, it pinched from – that reduced flow is down to three millimeters of flow going down to my legs and stuff. My leg goes numb and my hands and arms lock up." AR p. 44. In a Disability Determination Explanation dated January 8, 2016, Plaintiff's allegations of impairments were listed as: cervical myelopathy with spondylosis, lumbar disc disease, carpal tunnel symptoms, hands lock up, anxiety, GERD (gastroesophageal reflux disease), hard of hearing, keratoconus (progressive thinning of the cornea), sleep apnea, and hypertension. AR p. 67.

[6] AR p. 78.

[7] AR pp. 39-64.

[8] AR pp. 12-30.

[9] AR p. 155.

[10] AR pp. 1-3.

[11] R. Doc. 1.

[12] *See*, 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

decision applies the proper legal standards.[13] If the Commissioner fails to apply the correct legal standards, or to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[14]

### III. The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[15] The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[16] In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[17]

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.[18] If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that the claimant is capable of performing other

---

[13] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[14] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

[15] 20 C.F.R. §§ 404.1505; 416.905.

[16] 20 C.F.R. §§ 404.1520; 416.920.

[17] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

[18] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

work.[19] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[20]

The ALJ determined that Plaintiff had "not engaged in substantial gainful activity since October 1, 2013, the alleged onset date"[21] and that Plaintiff had severe impairments of "status-post anterior cervical discectomy and fusion of C5-C7; status-post carpal tunnel release surgery on the left hand with residuals; degenerative disc disease of the lumbar spine; and obesity."[22] The ALJ further found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except that he cannot climb ladders, ropes, or scaffolds and cannot perform overhead reaching. The claimant can occasionally stoop, kneel, crouch, and crawl. He cannot work on vibrating surfaces. Finally, he can occasionally use his left, non-dominant hand for gross manipulation or handling.[23]

Utilizing this RFC, the ALJ found that Plaintiff was unable to perform his past work, but that Plaintiff could perform other work, including the representative occupations of advertising material distributor, cafeteria attendant, and parking lot attendant, such that Plaintiff was not disabled from October 1, 2013 through June 5, 2017 (the date of the ALJ's decision).

### IV. Plaintiff's Allegations of Error

Plaintiff's briefing on appeal focuses on the ALJ's treatment of medical opinion evidence from Plaintiff's treating physicians, Drs. Burdine and Callerame, and the limitations set forth in Plaintiff's RFC. In addition to his argument regarding the weight given to the medical opinion

---

[19] 20 C.F.R § 404.1520(g)(1).

[20] *Muse*, 925 F.2d at 789.

[21] AR p. 17.

[22] AR p. 18. The ALJ found that Plaintiff's alleged impairments of gastroesophageal reflux disorder (GERD); hypertension; sleep apnea; keratoconus; hearing loss; anxiety disorder; and depressive disorder were non-severe or non-medically determinable. AR pp. 18-21. Plaintiff does not appeal this determination.

[23] AR p. 22.

evidence, Plaintiff also contends that the ALJ erred in not taking "into consideration Plaintiff's perfect 37-year work history."

V. **Law and Analysis**

A. **Alleged Onset Date**

Plaintiff's initial application for DIB benefits listed July 6, 2015 as the AOD.[24] However, the ALJ utilized a much earlier date, October 1, 2013, as Plaintiff's AOD.[25] On June 20, 2019, this Court ordered the parties to submit supplemental briefing regarding the correct onset date.[26] The Order requiring supplemental briefing noted that, while medical records prior to July 6, 2015 evidenced Plaintiff's improvement, the only treatment record after July 6, 2015 was a March 23, 2016 treatment note wherein Plaintiff reported "worsening" of pain.[27] Accordingly, clarification of the AOD was required since the ALJ relied on medical records evidencing Plaintiff's improved condition prior to July 6, 2015.

Plaintiff has consistently maintained that October 1, 2013 is the correct AOD.[28] Although the Commissioner asserts in its supplemental briefing that July 6, 2015 is the correct AOD, the Commissioner also recognizes that "the AOD 'is always the date the claimant alleges he or she because unable to work because of his or her medical condition, whether or not that date appears appropriate.'"[29] Considering Plaintiff's consistent position that October 1, 2013 is the correct onset date, the Court will also use October 1, 2013 as the AOD. By relying on the earlier AOD,

---

[24] AR p. 156.

[25] AR p. 17.

[26] R. Doc. 15.

[27] *See*, R. Doc. 15, p. 2, n. 9 (reviewing treatment records pre and post July 6, 2015).

[28] *See*, R. Doc. 11, p. 1 (asserting that Plaintiff "applied for disability insurance benefits on July 7, 2015, based on an alleged onset date of October 1, 2013."); R. Doc. 17, p. 2. (contending that it "appear[s] to [Plaintiff's counsel] that the ALJ was correct to state that the appropriate AOD is October 1, 2013" and that "contrary to Defendant's certainty, it is *at best* unclear what date was intended, or is appropriate.").

[29] R. Doc. 16, p. 1.

5

Plaintiff is asserting that he was disabled even when treatment records reflect improvement and the ability to engage in "light duty" work.[30]

### B. Substantial Evidence Supports the Weight Provided to the Medical Opinion Evidence of Drs. Burdine and Callerame

Plaintiff argues that the ALJ improperly rejected the medical opinions of two of Plaintiff's treating physicians, Drs. Burdine and Callerame.[31] Plaintiff asserts that if the opinions of Drs. Burdine and Callerame "were even *partially* credited, Plaintiff would be limited to *at most* sedentary work," and would be deemed disabled pursuant to the Medical-Vocational Guidelines.[32] Further, Plaintiff contends that his RFC does not accurately reflect the physical limitations recognized by Drs. Burdine and Callerame and that the ALJ did not provide the "requisite 'good reasons'" to give the opinions of Drs. Burdine and Callerame "little weight." The Court disagrees and finds that substantial evidence supports the ALJ's determination regarding the weight assigned to the opinions of Drs. Burdine and Callerame.

Dr. Burdine completed a Physical Capabilities Evaluation form on April 20, 2016.[33] Dr. Callerame completed the same form evaluation on June 23, 2016.[34] Both physicians opined therein that Plaintiff could sit for 2 hours in an 8 hour day, stand and walk for 2 hours in an 8 hour day,

---

[30] *See*, AR pp. 380-384 (Dr. Scrantz October 23, 2013 office visit note indicating, inter alia, neck pain is better, occasional headaches, no arm pain); pp. 436-440 (Dr. Callerame December 27, 2013 note reflecting neck and headache much better); AR p. 378 (Dr. Scrantz January 3, 2014 note reporting "neck pain is better," "no arm pain, improved," and "feeling good"); AR pp. 354-357 (Dr. Scrantz April 28, 2014 note indicting improvement "approx.. >70% improved from ACDF. Approx. > 80% improved from CTR. Doing light duty, will stay on that duty."); AR 497 (Dr. Burdine June 16, 2015 note indicating "Patient remains functional and pain is controlled," "His neck and back are doing much better," and "He continues to do well. He's not having any problems side effects or complications."). Because these records reflect Plaintiff's condition during the relevant time period, they are entitled to similar weight as the March 23, 2016 treatment note reflecting Plaintiff's "worsening" condition. AR pp. 558-561. *See*, *Velasquez on behalf of Velasquez v. Berryhill*, Civil Action NO. 17-17740, 2018 WL 4493004, at * 9 (E.D. La. July 20, 2018) ("The relevant time period to establish disability is from plaintiff's alleged onset date of August 26, 2014 through the date of the ALJ's decision.") (citing *Joubert v. Astrue*, 287 Fed. Appx. 380, 383-384 (5th Cir. 2008)).

[31] The Commissioner does not dispute that Drs. Burdine and Callerame are Plaintiff's treating physicians. *See*, R. Doc. 14, p. 5 ("the Commissioner submits that the ALJ gave adequate grounds to assign 'little weight' to some of Plaintiff's treating physician statements, including those of John M. Burdine, M.D., and Kevin J. Callerame, M.D.").

[32] R. Doc. 11, p. 7.

[33] AR pp. 537-541.

[34] AR pp. 545-549.

and could occasionally (defined as "up to 33% of the day") lift up to 10 pounds. Both physicians additionally checked "yes" in response to whether fatigue and pain would prevent Plaintiff "from working full-time at even a sedentary position." Plaintiff correctly notes that such limitations, if credited by the ALJ, would preclude Plaintiff from "light work."[35]

In considering the opinions of Drs. Burdine and Callerame, the ALJ explained that:

> although they are treating sources Dr. Burdine's and Dr. Callerame's limitations are not consistent with the record as a whole and are not supported by examination findings or the claimant's reported activities. For instance, the claimant's reported activities such as driving or using a riding lawnmower are not consistent with a complete prohibition against stooping. Furthermore, in March 2016 Dr. Burdine observed decreased sensation, weakened left grip, and pain with range of motion but normal gait and station, overall normal strength, normal reflexes, and normal coordination. He also noted potential "exaggerated" symptoms. Consequently, the opinions of Dr. Burdine and Dr. Callerame are given little weight.[36]

---

[35] R. Doc. 11, p. 7. 20 CFR 404.1567(b) defines light work as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." The regulation goes on to explain that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls." *Id*. "'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday. Sitting may occur intermittently during the remaining time." SSR 83–10, 1983 WL 31251. *See also*, SSR96–9P, 1996 WL 374185 ("If an individual is able to stand and walk for approximately 6 hours in an 8–hour workday (and meets the other requirements for light work), there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs."). In contrast, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 CFR 404.1567(a). Plaintiff asserts that if he was limited to sedentary work, as an individual closely approaching advanced age with a high school education and no transferable skills, "Grid Rule 201.14 *unequivocally directs a finding of disabled* based on Plaintiff's vocational factors." R. Doc. 11, p. 7. Conversely, using these same vocational factors, an individual limited to light work is not disabled pursuant to Grid Rule 202.14. *See*, 20 CFR § 404, Subpt. P, App., 2.

[36] AR p. 27. The ALJ additionally noted that "[t]he question of whether an individual is disabled or is able to work is reserved to the Commissioner of Social Security." AR p. 27. "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). *See also*, 20 CFR § 404.1527(d)(1). Dr. Burdine's opinion regarding Plaintiff's ultimate ability to work is not dispositive of whether substantial evidence supports the weight given by the ALJ to Dr. Burdine's opinion. *See*, AR p. 561 (Dr. Burdine's March 23, 2016 treatment note stating "[a]t this point I consider the patient disabled because of myelomalacia of the cervical spine and the annular tears in the lumbar spine. He would like to do something but I just don't think that he is physically able to especially given the fact that he has chronic pain and he now has concentration problems and depression problems associated with this. It is my opinion that he should apply for disability."); AR p. 550 (Dr. Burdine's February 21, 2017 annual physician's statement (directed to Liberty Mutual

7

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."[37] However, an ALJ may reject the treating source's opinion when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'"[38] If the ALJ's decision is supported by substantial, contradictory, first-hand evidence from another physician, the ALJ is "not required to go through all six steps in *Newton* [because] . . . the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his."[39] Further, "the ALJ may give 'less weight, little weight, or

---

regarding Dow Chemical disability benefits) noting Plaintiff is "totally disabled (permanently) – disease only progresses – never improves.").

[37] *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). For claims filed on or after March 27, 2017, the federal regulations provide:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c. Because this claim was filed prior to March 27, 2017, the treating physician rule set forth in 20 C.F.R. § 404.1527 controls.

[38] *Walker v. Barnhart*, 158 Fed. Appx. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).

[39] *Cain v. Barnhart*, 193 Fed. Appx. 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 Fed. Appx. at 534)). The Fifth Circuit has explained that "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 454 (5th Cir. 2000) (emphasis added). *See also*, *Holifield v. Astrue*, 402 Fed. Appx. 24, 27 (5th Cir. 2010) ("This court has interpreted 20 C.F.R. § 404.1527(d)(2) to mean that, 'absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).' Since the record is replete with reliable medical evidence controverting Dr. Purser's opinions, the ALJ had no obligation to perform a detailed analysis before rejecting his opinions.") (citing *Newton*).

8

even no weight' to the opinion of a treating physician upon a showing of good cause."[40] In summary, an ALJ is free to discredit an opinion of a treating physician when it is contradicted by the evidence in the record.[41] Where an ALJ has found a treating physician's opinion to be inconsistent with that physician's own treatment records and other evidence in the record, this Court has affirmed the ALJ's rejection of that opinion.[42]

Although Dr. Callerame and Dr. Burdine both opined via Physical Capacities Evaluation forms that Plaintiff had could not sit, stand, or walk for more than a total of four hours in an eight hour day[43] and could only occasionally lift up to ten pounds, substantial evidence supports the ALJ's determination that these "limitations are not consistent with the record as a whole and are not supported by examination findings or by the claimant's reported activities."[44] Medical records

---

[40] *Ray v. Barnhart*, 163 Fed. Appx. 308, 313 (5th Cir. 2006) (quoting *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)).

[41] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion in favor of an examining physician where the evidence supports a contrary conclusion).

[42] *See*, *Villar v. Colvin*, Civil Action No. 14-562, 2015 WL 7731400 (M.D. La. Oct. 8, 2015) (affirming ALJ's rejection of treating physician's opinion where physician's own notes and other notes in the record failed to support the physician's opinion); *Miller v. Colvin*, Civil Action No. 14-675, 2016 WL 1178391, at * 4 (M.D. La. Feb. 25, 2016) (affirming ALJ's decision to afford little weight to treating psychiatrist's Mental Medical Source Statement where Statement was unsupported by psychiatrist's own treatment notes). *See also*, *Swan v. Colvin*, 2016 WL 5429669, at * 13 (M.D. La. Aug. 30, 2016) ("The Court finds it unnecessary to determine whether Dr. Morrison is a 'treating physician' because Dr. Morrison's November 26, 2013 Medical Source Statement is inconsistent with her treatment records and would not be entitled to substantial weight even if Dr. Morrison is a 'treating physician.' The Fifth Circuit has held that an ALJ may give less weight to a treating physician's opinion when good cause is shown, as is the case when his statement as to disability is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical laboratory diagnostic techniques, *or is otherwise unsupported by the evidence*.") (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)) (Emphasis added by *Swan* court).

[43] Plaintiff testified that he sleeps 3-4 hours per night in a sitting position, which seems to contradict the opinions from Drs. Burdine and Callerame that he can sit for only 2 hours in an 8 hour day. AR p. 55.

[44] AR p. 27.

9

(including those of Drs. Burdine and Callerame) before[45] and after[46] Plaintiff's AOD consistently record normal posture and gait, full range of motion, and normal muscle strength and tone. Although the ALJ correctly noted that "[s]ubsequent records continue to indicate reports of pain and fatigue, with difficulty performing activities such as standing and walking,"[47] Plaintiff's later medical records continue to reflect normal gait and strength upon physical exam.[48] Plaintiff's

---

[45] Pre-onset date records: AR p. 405 (Dr. Scrantz April 22, 2013 treatment note reflecting normal posture and gait; normal full range of motion of all joints; normal reflexes, coordination, muscle strength and tone, no balance issues.); AR p. 490 (Dr. Callerame May 1, 2013 treatment note recording decreased range of motion in neck; normal range of motion of all joints; normal gait, posture, and strength in upper and lower extremities); AR pp. 466-467 (Dr. Callerame June 7, 2013 note reflecting normal posture and gait on physical exam); AR p. 400 (Dr. Scrantz June 24, 2013 physical exam recording normal posture and gait; normal full range of motion of all joints; normal reflexes, coordination, muscle strength and tone, no balance issues.); AR p. 395 (Dr. Scrantz August 19, 2013 physical exam noting normal posture and gait; normal reflexes, coordination, muscle strength and tone and no balance issues); AR 388-389 (Dr. Scrantz September 18, 2013 physical exam reflecting normal posture and gait, normal full range of motion in all joints, normal reflexes, coordination, muscle strength and tone).

[46] Post-onset date records: AR p. 382-383 (Dr. Scrantz October 23, 2013 note reflecting normal posture and gait, normal full range of motion of all joints, normal reflexes, coordination, muscle strength and tone); AR p. 440 (Dr. Callerame December 27, 2013 note reflecting normal gait; normal strength in upper and lower extremities "except left APB mild 5-/5 compared to right side."); AR 377-378 (Dr. Scrantz January 3, 2014 physical exam note reflecting normal posture and gait, "normal full range of motion in all joints," "normal reflexes, coordination, muscle strength and tone."); AR p. 362 (Dr. Scrantz, February 17, 2014 office note reflecting normal posture and gait; normal full range of motion of all joints; normal reflexes, coordination, muscle strength and time on physical exam); AR p. 357 (Dr. Scrantz April 28, 2014 physical exam reflecting normal posture and gait; normal full range of motion in extremities; normal reflexes, coordination, muscle strength and time.); AR p. 433 - 434 (Dr. Callerame June 10, 2014 physical exam reflecting normal full range of motion of all joints, normal gait except for tandem difficulties, normal strength and sensation in the upper and lower extremities); AR p. 352 (Dr. Scrantz July 29, 2014 physical exam reflecting normal posture and gait, normal full range of motion of all joints, "no focal deficits, CN II-XII grossly intact with normal reflexes, coordination, muscle strength and tone."); AR pp. 427-428 (Dr. Callerame November 17, 2014 physical exam reflecting normal posture and gait and normal strength and lower extremities); AR p. 415 (January 12, 2015 Dr. Callerame note reflecting normal posture and gait, 5/5 strength in upper and lower extremities but decreased sensation at the fingertips of hands); AR p. 510 (Dr. Burdine March 17, 2015 physical exam noting normal gait and station and normal bulk, tone and strength in upper and lower extremities); AR p. 506 (Dr. Burdine April 14, 2015 physical exam noting mildly antalgic gait but normal muscle strength, bulk, and tone in upper and lower extremities); AR p. 496 (Dr. Burdine June 16, 2015 note reflecting mildly antalgic gait but normal muscle strength in upper and lower extremities).

[47] AR p. 25.

[48] AR p. 560 (Dr. Burdine March 23, 2016 physical exam reflecting pain and tenderness on musculoskeletal exam and weak handgrip on left but normal tone, bulk and strength in lower extremities and normal gait and station). This exam was less than one month before Dr. Burdine's Physical Capabilities Evaluation was completed. Dr. Burdine's March 23, 2016 treatment note additionally states that "[t]he current symptoms are exaggerated with hypertension and are suspicious for the presence of facet-related disease." AR p. 560. The ALJ misquotes this portion of the treatment note by stating that "[t]he claimant's treating pain management doctor also noted in March 2016 that the claimant's current symptoms were 'exaggerated.'" AR p. 25. Considering the ALJ's reliance on consistent medical records reflecting normal gait, tone, and muscle strength, which is substantial evidence supporting the weight assigned to Drs. Burdine and Callerame's opinions, the ALJ's statement regarding "exaggerated" symptoms is harmless error. *See*, T*homas v. Commissioner of Social Security*, Civil Action No. 16-830, 2018 WL 1095569, at * 5 (M.D. La. Feb. 28, 2018) ("procedural perfection is not required, and so long as substantial evidence in the record supports this finding and the Plaintiff's rights have not been affected, it will not be overturned." (citing *Moore v. Astrue*, Civil Action No. 3:11-cv-2961, 2012 WL 1719183, at *4 (N.D. Tex. May 16, 2012) ("Nevertheless, the harmless error doctrine applies

10

medical records following his October 2, 2013 anterior cervical disc fusion[49] and January 14, 2014 left carpal tunnel release[50] indicate significant improvement,[51] and the ALJ correctly noted that functional limitations imposed following surgery, including a prohibition against lifting more than ten pounds, were intended to be temporary.[52] Plaintiff consistently reported improvement with physical therapy,[53] and although Plaintiff reported some difficulties with respect to his daily activities, he also indicated that he was able to drive and could complete certain household chores and daily tasks.[54] Finally, although Plaintiff argues that the ALJ committed reversible error by

---

in Social Security disability cases, and procedural perfection is not required as long as the claimant's substantial rights have not been affected by an ALJ's error.")); *Dye v. Astrue*, Civil Action No. 13-220, 2015 WL 410689, at * 6 n. 18 *M.D. La. Jan. 29, 2015) ("procedural perfection in administrative proceedings is not required. A judgment will not be vacated unless the substantial rights of a party have been affected. Procedural improprieties constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision.") (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988))

[49] *See*, AR p. 390.

[50] *See*, AR p. 280.

[51] *See*, AR pp. 380-384 (Dr. Scrantz October 23, 2013 office visit note indicating, *inter alia*, neck pain is better, occasional headaches, no arm pain); pp. 436-440 (Dr. Callerame December 27, 2013 note reflecting neck and headache much better); AR p. 378 (Dr. Scrantz January 3, 2014 note reporting "neck pain is better," "no arm pain, improved," and "feeling good"); AR pp. 354-357 (Dr. Scrantz April 28, 2014 note indicting improvement "approx.. >70% improved from ACDF. Approx. > 80% improved from CTR. Doing light duty, will stay on that duty."); AR 497 (Dr. Burdine June 16, 2015 note indicating "Patient remains functional and pain is controlled," "His neck and back are doing much better," and "He continues to do well. He's not having any problems side effects or complications.").

[52] Dr. Scrantz performed an anterior cervical disc fusion on October 2, 2013. AR p. 390. Per Plaintiff's discharge instructions following his disc fusion, the following activity restrictions were imposed: "no bending, no lifting > 10 pounds, no twisting, no driving, wear collar when out of bed, shower only." AR 294. Following Plaintiff's carpal tunnel release, activity instructions upon discharge were "no lifting > 10 pounds, Shower only, Keep incision dry x 1 Week" AR 280. On February 17, 2014, Dr. Scrantz reviewed Plaintiff's work restrictions and released him to light duty, with no climbing for three more months. AR 362-363.

[53] *See*, AR p. 504 (Dr. Burdine April 14, 2015 treatment record, "Patient states he is currently in P.T. which helps a lot of his neck and lower back pain."); AR p. 501 (Dr. Burdine June 4, 2015 note); AR p. 497 (Dr. Burdine June 16, 2015 note, "His neck and his back are doing much better. The physical therapy has helped his back considerably. At this point we're going to continue with physical therapy starting 3 weeks after her [sic] sinus surgery. He continues to do well. He's not having any problems side effects or complications."). While "pain can constitute a disabling impairment," the Fifth Circuit has held that "[p]ain constitutes a disabling condition when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). There is no indication here that Plaintiff's pain rises to the level of disabling.

[54] In his August 10, 2015 Adult Function Report, Plaintiff reported that he could prepare sandwiches, frozen meals and sometimes cook small meals, could do some household chores and small repairs and mow grass. He also stated that he needed help with the yard work and heavy house work. He reported he could drive and ride in a car and that his hobbies and interests included "daily piddling around house, watching tv, camping about twice a year with help from wife, play with grandkids weekly" but that he "can't pick up grandkids like I used to, wife helps with other things like camping and projects around house." AR pp. 236-237. Dr. Van Hook noted that Plaintiff reported he could drive and bathe himself and that he "spends a typical day caring for his ADLs. He said that he will take his medication, relax to calm his jitters, walk the driveway (as instructed by his physician), take a hot shower, and fool around the

failing to "rely on a contrary well-supported treating or examining source opinion,"[55] the ALJ did afford the opinion of Dr. Scrantz, Plaintiff's surgeon, "partial weight" and concluded that the indication in Dr. Scrantz's treatment notes that Plaintiff "could perform light work by early 2014 is consistent with the overall evidence of record including minimal findings during examinations regarding gait, strength, range of motion, and coordination as well as with the claimant's reported activities."[56] Because substantial evidence supports the weight afforded to the medical opinion evidence of Drs. Burdine and Callerame, this is not reversible error.[57]

---

house. He said that he is limited from doing more during the day because of his ongoing physical problems. He said that he is frequently tired because of his medication. He said that he will pick fruit from his yard on occasion and take them to give to patients at the hospital where his wife works. Regarding home and general life adaptation, he reported limited maintenance of household chores. He said that he is able to mop the floor. He said that he is sometimes able to sweep, cook, wash dishes, and cut grass. He said that he is not able to do laundry." AR p. 520. Per Plaintiff's February 22, 2016 Disability Report, Plaintiff reported that he could drive short distances but had trouble getting into and out of the car, that some days his wife helps him put his socks on, that he has trouble pulling a shirt over his head, and that he uses a shower chair. AR p. 249. During the March 7, 2017 hearing, Plaintiff testified he was unable to work because his "leg goes numb and my hand and my arms lock up." AR p. 44. He testified that he wakes up in the morning, takes his medication "sometime[s]" throws up, rests, and then sometimes visits his mother or "piddle[s] around the house." AR p. 47. Plaintiff testified that his wife does most of the cooking and cleaning, and that she "hired a cleaning lady to come in and clean every other week." AR p. 48. Regarding camping, Plaintiff stated that "Me and my wife likes to go camping but when we go camping, my wife does most of the work. We alternate the driving to where it ain't so much for me to drive. She sets up the camper." AR p. 49. Plaintiff testified that he and his wife bought the camper in 2016, well after the AOD. *Id.* While Plaintiff testified that he tries to cut grass, he explained that "I'll cut part of it, and sometimes -- and then sometimes my neighbor cuts all my grass for me. My son will come over and do the weed eating…." AR p. 49. Additionally, he stated that "What used to take, you know, say 45 minutes to an hour to cut the grass, it would take me probably two days to cut the grass now because I'll go cut a little piece then I'll stop. Go inside and rest, then I'll cut a little bit more." AR p. 49.

[55] R. Doc. 11, p. 17.

[56] AR p. 26. *See*, AR p. 362-363 (Dr. Scrantz February 17, 2014 note reflecting Plaintiff would be released to work light duty with no climbing for three months); AR p. 357 (Dr. Scrantz April 28, 2014 note stating Plaintiff was "doing light duty, will stay on that duty."). Additionally, the ALJ found Plaintiff's physical therapist's report that Plaintiff was restricted to "a Light Physical Demand Level with restricted sitting/standing and repetitive activities" consistent with Plaintiff's "ability to perform work at a light exertional level," AR p. 557 & 26, and the record as a whole, including Plaintiff's activities of daily living. Finally, with respect to Plaintiff's ability to sit and/or walk and sit (with normal breaks), it appears that Plaintiff's RFC mirrors the limitations reflected in the RFC done following a review of Plaintiff's medical records at the initial disability review stage. AR p. 74.

[57] Plaintiff additionally argues that remand is required because the ALJ relied on her "law analysis of the raw medical data" and should have instead, "[a]t the very least," "recontacted the treating or examining sources, obtained a review of the record and testimony by a medical expert, or sent the entire file (including the new evidence and subsequent opinions) back to the State Agency for review." R. Doc. 11, p. 18. However, the regulations contemplate recontacting a treating physician as a possible option when the Commissioner is unable to make a decision "because the evidence in…the record is insufficient or inconsistent." 20 C.F.R. § 404.1520b(b). Here, there was substantial evidence to support the ALJ's decision.

## C. Substantial Evidence Supports the RFC Determination

Plaintiff's arguments regarding the treatment of Dr. Burdine's and Dr. Callerame's medical opinions is also, at base, an assertion that Plaintiff's RFC "does not accurately depict the full impact" of Plaintiff's limitations.[58]

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."[59] A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.[60] The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision.[61] Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision.[62]

As noted above, the ALJ found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except that he cannot climb ladders, ropes, or scaffolds and cannot perform overhead reaching. The claimant can occasionally stoop, kneel, crouch, and crawl. He cannot work on vibrating surfaces. Finally, he can occasionally use his left, non-dominant hand for gross manipulation or handling.[63]

In developing Plaintiff's RFC, the ALJ reviewed Plaintiff's medical records from April 2013 through the beginning of 2017 and stated that Plaintiff's examinations "routinely show

---

[58] *See*, R. Doc. 11, p. 7.

[59] *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir.1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco v. Shalala*, 27 F.3d 160, 163–64 (5th Cir. 1994).

[60] *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[61] *Leggett*, 67 F.3d at 564.

[62] *Johnson*, 864 F.2d at 343–44.

[63] AR p. 22.

normal gait; station; toe, heel, and tandem walk; range of motion; reflexes; sensation; strength; and coordination."[64] Although the ALJ noted that "[s]ubsequent records continue to indicate reports of pain and fatigue, with difficulty performing activities such as standing and walking,"[65] the ALJ concluded:

> Overall, therefore, the medical evidence of record does indicate some improvement with surgery and treatment, including indications following surgery of at least 70 percent improvement in both the claimant's neck and carpal tunnel symptoms. While medical imaging has continued to indicate some degenerative changes and potential herniations or impact of the claimant's nerve root, examinations still routinely demonstrate normal gait, strength, range of motion, reflexes, and coordination or only minimal symptoms such as mildly reduced strength or a mild limp.[66]

The ALJ further explained "[i]n addition, the claimant is able to engage in activities such as driving, mowing the lawn, making small household repairs, completing personal care tasks, cooking simple meals, and engaging in household chores including sweeping, mopping, and washing dishes."[67] For the same reasons substantial evidence exists to support the weight afforded to the medical opinions of Drs. Callerame and Burdine, substantial evidence supports the RFC determination.[68]

---

[64] AR pp. 21-22. *See also*, AR p. 24 ("Overall, however, the claimant exhibits generally normal gait; normal heel, toe, and tandem walk; normal station; full range of motion; symmetric reflexes; intact sensation; full strength; and normal coordination.").

[65] AR p. 25.

[66] AR p. 26.

[67] AR p. 26.

[68] As discussed above, Plaintiff's medical records consistently record normal posture and gait, full range of motion, and normal muscle strength and tone. Although Plaintiff argues that that the ALJ's reliance on Dr. Scrantz's medical opinion was improper because Dr. Scrantz's opinion (regarding temporary restrictions and the indication that Plaintiff could return to light work by early 2014) "did not take into account subsequent evidence of worsening of Plaintiff's condition," R. Doc. 11, p. 17, n. 5, even Dr. Burdine's March 23, 2016 treatment note (wherein Dr. Burdine opines that he considers Plaintiff will never be able to do any bending and lifting or prolonged sitting and that Dr. Burdine considers Plaintiff "disabled because of the myelomalacia of the cervical spine and the annular tears in the lumber spine") reflected normal gait and station as well as normal tone, bulk, and strength in the lower extremities. AR p. 560. Per Plaintiff's August 10, 2015 Adult Function Report, Plaintiff reported that he could "lift 20 [pounds] or less." AR p. 238. This appears to be consistent with the accommodated work Plaintiff performed from February 11, 2014 through January 1, 2015. *See*, AR p. 212 ("From 10/1/2013 to 02/10/2014, I was out of work for surgery because of my medical condition. I returned to work on 02/11/2014 with special restrictions. I couldn't work outside of the control room. I couldn't lift more than 20 pounds, I couldn't wear a hard hat, I couldn't wear breathing equipment,

### D. The Fact that the ALJ Did Not Discuss Plaintiff's Work History is Not Reversible Error

The ALJ discussed Plaintiff's allegations of pain and limitations (including numbness in his legs and hands and difficulty standing or sitting for long periods of time) and found that "the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely supported by the medical evidence and other evidence in the record…" and specifically noted that "the medical evidence of record indicates routinely minimal objective findings regarding gait, strength, and range of motion, as well as indications of improvement with treatment and activities not fully consistent with the claimant's alleged limitations."[69]

Plaintiff argues that "the ALJ was required to consider Plaintiff's strong work history as part of his credibility analysis but failed to do so."[70] When evaluating the intensity and persistence of a claimant's symptoms, the Social Security Regulations provide that "all of the available evidence from your medical sources and nonmedical sources" will be considered, "including information about your prior work record."[71] Regardless of whether this issue is framed as a "credibility" determination or instead as a challenge to the ALJ's analysis of the "intensity, persistence, and limiting effects" of Plaintiff's impairments,[72] "courts in the Fifth Circuit have

---

and I couldn't wear anything that pulled on my neck or back. I worked 02/11/2014 until 01/01/2015. I stopped working because of my medical condition.").

[69] AR p. 23.

[70] R. Doc. 11, p. 19. *See also*, R. Doc. 11, p. 20 ("Plaintiff's lengthy and consistent work history is a factor that lends to his credibility, but the ALJ failed to even acknowledge this fact.").

[71] 20 CFR § 404.1529(c)(1) & (3).

[72] In March 2016, the Social Security Administration issued Social Security Ruling 16–3p, which provided guidance regarding how the SSA evaluates "statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." Soc. Sec. Admin., SSR 16–3P, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017). This Ruling superseded SSR 96–7p, which for decades provided guidance on this topic. Ruling 16–3p eliminated the use of the term "credibility" from the SSA's sub-regulatory policy which brought it in line with the long-standing regulations that did not employ the term. SSR 16–3P, 2016 WL 119029, at *2. Plaintiff recognizes the effect of SSR 16-3p, but explains that he "will continue to use the word credibility in this section of

reasoned that a claimant's work history is 'but one factor to consider when evaluating [a claimant's] symptoms.'"[73]

An "ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility."[74] The March 7, 2017 hearing testimony makes clear that the ALJ was aware of Plaintiff's work history.[75] Although the ALJ did not explicitly discuss Plaintiff's work history in the June 5, 2017 decision, failure to do so is not reversible error because the ALJ "provided sufficient reasons and cited specific evidence to support the finding"[76] that Plaintiff's "statements concerning the intensity, persistence, and limiting effects" of his impairments were not "entirely supported by the medical evidence and other evidence in the record" – *i.e.*, the "routinely minimal objective findings regarding gait, strength, and range of motion as well as indications of improvement with treatment and activities not fully consistent with the claimant's alleged limitations."[77]

---

the brief, since it is in common usage, but only means by using it the agency's required analysis of consistency and supportability, as explained in SSR 16-3p." R. Doc. 11, pp. 18-19, n. 6.

[73] *Martinez v. Berryhill*, 17-cv-27, 2017 WL 8180457, at * 5 (W.D. Tex. Nov. 14, 2017).

[74] *Clary v. Barhart*, 214 Fed. Appx. 479, 482 (5th Cir. Jan. 24, 2007) (unpubl.) (rejecting contention that ALJ was required to expressly consider each of the factors discussed in 20 CFR § 404.1529(c)(3)). *See also*, *Martinez*, 2017 WL 8180457, at * 5 ("no prejudice flows from an ALJ's failure to discuss each credibility factor."); *Wetzel v. Berryhill*, 5-17-cv-364, 2018 WL 4664139, at * 9 (W.D. Tex. Sept. 28, 2018) ("The Fifth Circuit, however, does not appear to have expressly addressed whether an ALJ is required to consider a plaintiff's lengthy work history as bolstering evidence of credibility. District courts in the circuit, including in this District, have rejected imposing such a bright-line requirement on an ALJ.").

[75] AR pp. 43-44 (A: "I was a senior technologist for Dow Chemical operator, you know, lead operator." Q: "How long did you do that kind of work?" A: "I did that kind of work for right at 20 years. Before that I worked for a construction company."). Plaintiff's work history cuts against his argument that he was disabled as of October 1, 2013. A Work Activity Questionnaire was completed by Plaintiff's former employer, Dow Chemical, on August 3, 2015 indicating that Plaintiff needed assistance to complete his job duties but was at 90% of other employees' productivity and did satisfactory work through January 1, 2015. AR pp. 167-168. Plaintiff also testified that he received a production bonus from Dow. AR p. 43.

[76] *Wetzel*, 2018 WL 4664139, at * 5. *See also*, *Martinez*, 2017 WL 8180457, at * 6 ("Thus, even if the ALJ did not but should have specifically considered and given weight to Plaintiff's lengthy work history when evaluating her credibility, this substantial evidence in the record supports the ALJ's determination.").

[77] AR p. 24.

## VI. Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record, considered as a whole, supports the finding that the ALJ applied the proper legal standards and that substantial evidence supports the determination that Plaintiff was not disabled. Accordingly, under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of the Social Security Administration denying the application for disability insurance benefits filed by plaintiff, Jesse Joseph Tullier, is **AFFIRMED** and this action is **DISMISSED**.

Signed in Baton Rouge, Louisiana, on September 16, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**